**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**

**ANTHONY DAVON WILLIAMS (03),**

    **Defendant.**

**Case No. 14-40094-03-DDC**

## MEMORANDUM AND ORDER

This matter comes before the court on pro se[1] defendant Anthony Davon Williams's Motion for Emergency Relief Under the Congressionally Enacted First Step Act of 2018 (Doc. 159) filed June 3, 2020.  Mr. Williams seeks compassionate release because of the COVID-19 pandemic.  The government filed a Response (Doc. 166) and Supplemental Response (Doc. 175), and defendant has filed a Reply (Doc. 173), Reply to Government's Supplemental Response (Doc. 178) and a Request for Judicial Notice of Supplement Authority (Doc. 179).  For reasons explained below, the court denies Mr. Williams's motion.

**I.  Background**

On July 30, 2014, a grand jury charged Mr. Williams with (1) conspiracy to possess with intent to distribute approximately six kilograms of a mixture containing cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) (Count 1) and (2) possession with intent to distribute approximately six kilograms of a mixture containing cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  Pursuant to 21 U.S.C. § 851, the government filed an

---

[1]     Because Mr. Williams proceeds pro se, the court construes his filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the court does not assume the role of advocate for a pro se litigant.  *Id.*

information which alleged that Mr. Williams had three prior convictions for felony drug offenses, which would have subjected him to a mandatory sentence of imprisonment for life under 21 U.S.C. § 841(b)(1)(A).  *See* Information (Doc. 32).

On August 7, 2015, Mr. Williams pled guilty to Count 1 of the superseding indictment pursuant to a plea agreement under Rule 11(c)(1)(C), Fed. R. Civ. P., which proposed a sentence of 156 months in prison.  *See* Plea Agreement (Doc. 107), ¶ 1.  Consistent with the parties' agreement, the government withdrew the Section 851 information.

The Presentence Investigation Report ("PSR") calculated a total offense level of 34 and a criminal history category VI, with a Guidelines sentencing range of 262 to 327 months in prison. PSR (Doc. 118), ¶ 95.  The PSR noted that absent the plea agreement, Mr. Williams faced a mandatory sentence of life.  *Id*., ¶ 96.

On November 2, 2015, consistent with the recommended sentence in the Rule 11(c)(1)(C) agreement, the court sentenced Mr. Williams to 156 months in prison.  Mr. Williams appealed.  On March 18, 2016, the Tenth Circuit dismissed the appeal.

On June 3, 2020, Mr. Williams filed the instant motion seeking compassionate release. Mr. Williams currently is incarcerated at FCI Safford in Safford, Arizona.  As of October 13, 2020, four inmates at this facility have tested positive for COVID-19, but they have all recovered.  *See* BOP, *COVID-19 Cases*, https://www.bop.gov/coronavirus (last visited Oct. 13, 2020).  Mr. Williams asserts that he suffers from asthma, a heart murmur, streptococcal pharyngitis, allergic rhinitis, and elevated amylase.  With good time credit, Mr. Williams's projected release date is September 16, 2025.  *See* BOP, *Find an Inmate*, https://www.bop.gov/inmateloc (last visited Sept. 28, 2020).

## II. Legal Standard and Exhaustion of Administrative Remedies

"A district court is authorized to modify a [d]efendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so." *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) (quoting *United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996)). Title 18 U.S.C. § 3582(c)(1)(A)—commonly called the compassionate release statute—permits a court to modify a term of imprisonment but only if certain exceptions apply. For many years, these exceptions only permitted the Bureau of Prisons ("BOP") to bring a motion under the compassionate release statute. But in 2018, the First Step Act modified the compassionate release statute and authorized a defendant to file his own motion for relief. First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018). This amendment authorized an inmate to make such a motion, but only after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Mr. Williams submitted a request for compassionate release to the warden on April 21, 2020. *See* Doc. 177. Some four months later, the warden responded to Mr. Williams's request. *See id.* The government concedes that Mr. Williams has satisfied the exhaustion requirement. *See* Doc. 175 at 6. Because Mr. Williams waited 30 days after asking his warden to file a motion in federal court, he has satisfied the exhaustion requirement of § 3582(c)(1)(A). So, the court now turns to the substance of Mr. Williams's motion.

## III. Discussion

Initially, the court addresses Mr. Williams's request that the court appoint counsel. *See* Motion (Doc. 159) at 6. Pursuant to District of Kansas Standing Order No. 20-8, after reviewing

3

Mr. Williams's motion, the FPD declined to enter an appearance or seek representation for him from other appointed counsel. The Sixth Amendment right to counsel does not apply to post-conviction motions after a defendant has exhausted the direct appeal process. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). But, a district court has discretion to appoint counsel for a post-conviction motion when "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). When considering whether it should appoint counsel, the court considers a variety of factors, including "the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims." *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). For the reasons described below, the court finds that Mr. Williams's motion lacks merit. Mr. Williams appears capable to present the claims adequately, and the claims do not involve particularly complex legal or factual issues. Accordingly, the court denies his request for counsel.

### A. The court exercises its discretion when deciding whether "extraordinary and compelling reasons" exist.

Section 3582(c)(1)(A) authorizes district courts to reduce a term of imprisonment if, "after considering the factors set forth in Section 3553(a) to the extent that they are applicable," the court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's applicable policy statement is found in U.S.S.G. § 1B1.13. *United States v. Beck*, 425 F. Supp. 3d 573, 578 (M.D.N.C. 2019). As pertinent here, this policy statement provides that the court may reduce a term of imprisonment, after considering the § 3553(a) factors, if (1) "[e]xtraordinary and compelling reasons warrant the reduction,"

4

(2) "[t]he defendant is not a danger to the safety of any other person or the community," and (3) "[t]he reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

Application Note 1 to § 1B1.13 provides that extraordinary and compelling reasons exist "under any of the [four] circumstances set forth below" in (A) through (D). U.S.S.G. § 1B1.13 cmt. n.1. Subdivision (A) of Note 1 provides that the medical condition of a prisoner may qualify him for compassionate release if (i) he is suffering from a terminal illness or (ii) he is suffering from a serious physical or medical condition that "substantially diminishes" his ability to provide self-care within the prison and he is not expected to recover. *Id*. Subdivisions (B) and (C) apply to age and family circumstances not invoked here. Subdivision (D) supplies a catchall provision: it applies when "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id*.

Mr. Williams plainly does not qualify under two of the four subdivisions in Note 1. He is not 65 years old (Subdivision (B)), and nothing suggests that the "family circumstances" addressed in Subdivision (C) apply. He also does not qualify under either of the two prongs described in Subdivision (A). Nothing suggests he "is suffering from a terminal illness"—prong (i)—or, as prong (ii) requires, that he has contracted a "serious physical or medical condition" and he "is not expected to recover from" it. *Id*.

This leaves Subdivision (D). The guidance in this subsection advises that § 1B1.13 applies when "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" of application Note 1.[2] *Id*.

---

[2] As explained above, in Section II, § 3582 used to permit the BOP—but not inmates—to file a compassionate release motion. But the First Step Act broadened § 3582(c)(1)(A), so inmates now can file a motion.

A few courts have ruled that only the BOP may invoke the catchall provision of subdivision (D). *United States v. Jackson* summarized the reasoning of one such decision:

> Congress gave the Sentencing Commission the mandate to decide what constitutes an extraordinary and compelling reason; the [First Step Act] did not expand the criteria for finding such a reason, but merely allowed defendants to file motions; there can be no relief under this statute without consistency with the policy statement; and the policy statement does not presently provide for a court determination of other reasons.

*Jackson*, 2020 WL 2812764, at *3 (citing *United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019)). But the Second Circuit and an "overwhelming majority" of district courts have rejected this approach. *Id.*; *see United States v. Brooker*, No. 19-3218-CR, — F.3d —, 2020 WL 5739712, at *6 (2d Cir. Sept. 25, 2020). They instead have "concluded that a court may make the necessary determination that other circumstances warrant relief under this statute." *Jackson*, 2020 WL 2812764, at *3 (citations omitted). In other words, "[w]hile the old policy statement provides helpful guidance, it does not constrain the [c]ourt's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." *Beck*, 425 F. Supp. 3d at 579; *see United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) (concluding that the correct interpretation of § 3582(c)(1)(A) is that when a defendant brings a motion for a sentence reduction under the amended provision, the court can determine whether extraordinary and compelling reasons— outside those delineated in subdivisions (A)–(C)—warrant granting relief); *cf. Brooker*, 2020 WL 5739712, at *6 (because Guideline § 1B1.13 does not apply to defense motions,

---

*See* First Step Act of 2018, Pub. L. No. 115-391, § A 603(b)(1), 132 Stat. 5194, 5239 (2018). The Sentencing Commission hasn't revised § 1B1.13 of the Guidelines since that amendment and so, the language used in this Guidelines provision still requires a motion by BOP. *United States v. Jackson*, No. 08-20150-02-JWL, 2020 WL 2812764, at *3 (D. Kan. May 29, 2020), *reconsideration granted on other grounds by* 2020 WL 4284312 (D. Kan. July 27, 2020).

"Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling").

The court joins this prevailing view, concluding that it may decide whether "extraordinary and compelling" reasons warrant compassionate release.

### B. Mr. Williams has not established that "extraordinary and compelling" reasons" warrant compassionate release.

Mr. Williams asserts that compassionate release is warranted because (1) he has medical conditions—asthma, a heart murmur, streptococcal pharyngitis, allergic rhinitis and elevated amylase—that place him at risk of serious illness or death should he contract the COVID-19 virus, (2) FCI Safford has dormitory-style living quarters which make it impossible to practice social distancing and other measures to prevent the spread of COVID-19, (3) if sentenced today, his Guidelines range would be significantly lower than at his original sentencing, and (4) the government violated his Sixth Amendment rights by recording his conversations with counsel. *See* Motion (Doc. 159) at 2–3; Reply to Government's Supplemental Response (Doc. 178) at 12, 14.

Mr. Williams asserts that he has several health conditions. Mr. Williams states that he is trying to obtain medical documents to verify that when he was born, he had asthma and a heart murmur. Reply to Government's Supplemental Response (Doc. 178) at 7–8. For purposes of Mr. Williams's motion for compassionate release, however, the relevant question is whether he presently is suffering from such conditions. Even if the court assumes that before Mr. Williams entered prison in 2014, a health care professional diagnosed him with asthma and a heart murmur, he has not shown that he *presently* has or is receiving treatment for such conditions. Moreover, a BOP printout of Mr. William's health conditions in December of 2019 reflects that he does not have asthma or a heart condition. *See* Doc. 159-2. The BOP records do confirm that

Mr. Williams has streptococcal pharyngitis, allergic rhinitis, and an elevated amylase level. *See id*. Even so, Mr. Williams has not shown that these conditions place him at heightened risk of contracting COVID-19 or serious risk of severe illness should he contract it. In addition, Mr. Williams concedes that if released from federal custody, he would remain confined in a state prison in Arizona based on a state detainer. Mr. Williams has not established that the risk of contracting COVID-19 is any less in the state prison system.

Next, Mr. Williams argues that FCI Safford has dormitory-style living quarters which make it impossible to practice social distancing and other measures to prevent the spread of COVID-19. As noted above, FCI Safford has had only four inmates that have tested positive for COVID-19, and they have recovered. Mr. Williams has not shown an imminent risk of an outbreak at this facility.

Mr. Williams contends that if he were sentenced today, his Guidelines range would be significantly lower than at his original sentencing in 2015. In an unpublished opinion, the Tenth Circuit held that a district court lacks jurisdiction to reduce a defendant's sentence based on post-sentencing developments in case law because the Section 1B1.13 commentary and BOP program statement applying that commentary do not identify a change in law as an "extraordinary and compelling reason" for relief. *United States v. Saldana*, 807 F. App'x 816, 820 (10th Cir. 2020). The court thus considers a change in Mr. Williams's Guidelines range only for the balancing of the sentencing factors under 18 U.S.C. § 3553(a), discussed below. *See United States v. McIntosh*, No. 11-20085-01-KHV, 2020 WL 5747921, at *5 n.4 (D. Kan. Sept. 25, 2020); *United States v. Walker*, No. 06-CR-00320-LTB, 2020 WL 5100250, at *4 (D. Colo. Aug. 21, 2020).

Finally, Mr. Williams argues that in considering his request for relief, the court should consider his claim that the government violated his Sixth Amendment rights by recording his conversations with counsel. *See* Reply to Government's Supplemental Response (Doc. 178) at 13–14. Mr. Williams filed a motion to vacate his sentence and conviction under 28 U.S.C. § 2255 on the same grounds. *See* Motion to Vacate and Discharge With Prejudice Under 28 U.S.C. § 2255(f)(4) (Doc. 147). That motion remains pending. The compassionate release provision in Section 3582(c)(1)(A) does not authorize relief based on a legal challenge to a defendant's conviction or sentence. Instead, Mr. Williams's sole remedy is under Section 2255. *United States v. Robinson*, No. 10-40037-01-DDC, 2020 WL 2572408, at *3 (D. Kan. May 21, 2020) ("After any direct appeal in a criminal action, a defendant's 'exclusive remedy' for challenging his conviction or sentence is under 28 U.S.C. § 2255 unless that remedy is inadequate or ineffective.") (citations omitted); *see also United States v. Warren*, No. 13-20081-JAR, 2020 WL 5253719, at *4 (D. Kan. Sept. 3, 2020) (§ 2255 motion, not a compassionate release motion under § 3582 motion, is the appropriate avenue to address prosecutorial misconduct claim based on recording of defendant's conversations with counsel). Accordingly, in determining whether Mr. Williams has shown extraordinary and compelling reasons, the court does not consider his allegations related to the purported recording of his conversations with counsel.

The above factors, both individually and collectively, do not constitute extraordinary and compelling reasons for release. To be sure, it is regrettable that Mr. Williams is incarcerated during this pandemic. But the court isn't convinced that the pandemic and Mr. Williams's relatively mild health conditions constitute "extraordinary and compelling reasons" that warrant release.

9

Even if Mr. Williams's health conditions and the COVID-19 pandemic constituted "extraordinary and compelling reasons" for release, the court nevertheless would deny relief "after considering the factors set forth in [18 U.S.C.] § 3553(a) to the extent that they are applicable"—the rubric § 3582(c)(1)(A) instructs the court to follow. Four of those statutory sentencing factors are particularly germane here. The next four paragraphs discuss them.

### 1. Nature and Circumstances of the Offense

On July 23, 2014, a Kansas Highway Patrol trooper stopped a white Chevrolet pickup truck with Pennsylvania license plates just south of Interstate 70 in Wabaunsee County, Kansas. PSR (Doc. 118) ¶ 14. Mr. Williams was in the left rear passenger area of the truck, his cousin was the driver and another cousin was in the front passenger area. *Id.*, ¶ 15. In a search of two spare tires in and below the truck bed, law enforcement officers discovered 6.52 kilograms of cocaine hydrochloride. *Id.*, ¶¶ 31–32. The court held Mr. Williams accountable for the entire amount of cocaine. *Id.*, ¶ 8.

To conclude with the obvious, Mr. Williams committed a serious drug trafficking felony offense. The nature and circumstances of the offense do not favor Mr. Williams's release.

### 2. History and Characteristics of the Defendant

Before this offense, Mr. Williams had a lengthy criminal history. Mr. Williams had four prior convictions for possessing cocaine with the intent to distribute it and a conviction for attempted transportation of marijuana. *Id.*, ¶¶ 49, 52, 54, 55, 57. He also had a prior federal conviction for possessing a firearm and state convictions for criminal trespass and disorderly conduct. *Id.*, ¶¶ 50, 51, 53, 56. Mr. Williams committed the instant offense while on probation for a drug offense. *Id.*, ¶¶ 57, 59. He had 15 criminal history points, which placed him in a criminal history category VI, which is the highest category under the Guidelines.

From a health perspective, Mr. Williams has some underlying health conditions, but it does not appear that these conditions place him at risk of complications should he contract COVID-19 or otherwise impact what is considered an appropriate sentence under Section 3553(a).

The history and characteristics of defendant do not weigh in favor of release.

### 3. The Need for the Sentence to Reflect the Offense's Seriousness, to Provide Just Punishment, and to Afford Adequate Deterrence to Criminal Conduct

When the court sentenced Mr. Williams, it adhered to the statutory mandate that it impose a sentence that was "not greater than necessary." 18 U.S.C. § 3553(a). Mr. Williams received a significant but, in context, appropriate sentence. After accounting for good time credit, he has served slightly more than 50% of his sentence. Reducing the sentence by almost 50% would produce a sentence that no longer reflects the gravity of Mr. Williams's criminal conduct. Likewise, such a reduced sentence no longer would furnish adequate deterrence to criminal conduct or provide just punishment. These factors weigh against Mr. Williams's motion.

### 4. The Sentencing Range Established for the Applicable Category of Offense Committed by the Applicable Category of Defendant

At sentencing, the court enhanced Mr. Williams's offense level because he was a career offender under the Guidelines. A defendant is classified as a career offender if (1) he was at least 18 years old when he committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) he has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a). Mr. Williams had at least three prior felony convictions for controlled substance offenses: (1) possession of a controlled substance with intent to deliver

(Allegheny County, PA, No. CC200304953), (2) possession of cocaine with intent to deliver (Allegheny County, PA, No. CC200409799), and (3) attempted transport of marijuana and possession for sale (Maricopa County, AZ, No. CR2013-1080-01). *See* PSR (Doc. 118), ¶¶ 52, 54, 57. Mr. Williams had a fourth felony drug conviction for possession of cocaine and marijuana with intent to deliver marijuana (Allegheny County, PA, No. CC200504727), but the PSR did not include that offense in the paragraph explaining the basis for the career offender enhancement. *See id*., ¶¶ 43, 55. The court calculated a total offense level of 34 and a criminal history category VI, with a Guidelines sentencing range of 262 to 327 months in prison. *See id.*, ¶ 95. As explained above, consistent with the parties' Rule 11(c)(1)(C) plea agreement, the court sentenced Mr. Williams to 154 months in prison, which was significantly below the low end of the Guidelines sentencing range.

Mr. Williams argues that if sentenced today under the current Guidelines, his sentencing range would be 92 to 115 months. *See* Reply to Government's Supplemental Response (Doc. 178) at 12. Mr. Williams apparently claims that he no longer qualifies as a career offender because two of his convictions in Allegheny County were consolidated for sentencing so they count for only one conviction under the current Guidelines. *See id.* On November 9, 2005, in the Court of Common Pleas in Allegheny County, Pennsylvania, Mr. Williams was sentenced for felony drug offenses that occurred on three separate occasions. *See id*., ¶¶ 52, 54, 55. The PSR reflects that Mr. Williams was arrested on the first offense on January 1, 2003, 13 months before he committed the second offense. *See id.*, ¶¶ 52, 54. The PSR also reflects that Mr. Williams was arrested on the second offense on February 1, 2004, some nine months before he committed the third offense. *See id.*, ¶¶ 54, 55. In these circumstances, both the 2014 and current Guidelines consider the offenses as three convictions. *See* U.S.S.G. § 4A1.2(a)(2) (Nov. 2014

and Nov. 2018) ("Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest[,] *i.e.*, the defendant is arrested for the first offense prior to committing the second offense."). In addition, in 2013, Mr. Williams was convicted of a fourth felony drug offense in the Superior Court of Maricopa County, Arizona. *See id.*, ¶ 57. Mr. Williams has not explained why the career offender enhancement under Section 4B1.1—which requires only two prior felony convictions for a controlled substance offense—does not apply.

Even though Mr. Williams still would qualify as a career offender under the current version of the Guidelines, his offense level would be three levels lower if he were sentenced today. In December of 2018, Congress lowered the statutory minimum from life to 25 years for a person who violates 21 U.S.C. § 841(b)(1)(A) after two serious drug felony convictions. *See* 21 U.S.C. § 841(b)(1)(A); *see also* U.S.S.G. § 4A1.1(b) (offense level 34 where offense statutory maximum is 25 years or more; offense level 37 where offense statutory maximum is life). If sentenced today, after a three-level reduction for acceptance of responsibility, it appears that Mr. Williams would have a total offense level of 31 (rather than 34) and a criminal history category VI, with a Guidelines sentencing range of 188 to 235 months in prison. Even so, Mr. Williams received a sentence of 154 months under the Rule 11(c)(1)(C) agreement, which remains significantly less than even the current Guidelines. Mr. Williams has not shown that any new circumstance justifies a further disparity from the low end of the Guidelines sentencing range.

### C. Conclusion

In sum, the pertinent sentencing factors in 18 U.S.C. § 3553(a) do not favor the reduction Mr. Williams's motion seeks. The court recognizes that Mr. Williams has the potential to

contract COVID-19 in prison which—even absent preexisting medical conditions known to cause severe illness —could increase the severity of the sentence beyond the 154 months already imposed. *United States v. Mel*, No. CR TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("The fact that Mel has been incarcerated . . . during a serious outbreak of COVID-19 inside the facility sufficiently increased the severity of the sentence beyond what was originally anticipated . . . ."). But this factor has not increased the sentence's severity to the point where an almost 50% reduction in Mr. Williams's custody sentence is sufficient to accomplish the objectives of sentencing.

The court is not prepared to conclude that Mr. Williams's health conditions or other factors cited above provide sufficient reason for his release under § 3582(c)(1)(A). The court thus denies Mr. Williams's Motion for Emergency Relief under the Congressionally Enacted First Step Act of 2018 (Doc. 159).

**IT IS THEREFORE ORDERED THAT** Anthony Davon Williams's Motion for Emergency Relief Under the Congressionally Enacted First Step Act of 2018 (Doc. 159) filed June 3, 2020 is denied.

**Dated this 14th day of October, 2020, at Kansas City, Kansas.**

                                          **s/ Daniel D. Crabtree**
                                          **Daniel D. Crabtree**
                                          **United States District Judge**