**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,

       Plaintiff,

v.

ANTHONY DAVON WILLIAMS (03),

       Defendant.

Case No. 14-40094-03-DDC

**MEMORANDUM AND ORDER; NOTICE AND ORDER TO SHOW CAUSE**

Anthony Davon Williams, proceeding pro se,[1] suspects that the government violated his Sixth Amendment rights.  Mr. Williams's suspicion is based on the *Black* investigation, which found that the government had procured some soundless surveillance footage of attorney-client meetings and recorded attorney-client phone calls from the detention center operated by Corrections Corporation of America (CCA).  Suspecting that the government secured access to his attorney-client communications while he was detained at CCA, Mr. Williams filed three documents:  (1) a Motion "for an order to receive transcripts to present as evidence" (Doc. 140); (2) his "Motion to Vacate and Discharge with Prejudice under 28 U.S.C. § 2255(f)(4) and Motion for Fed. R. Crim. P. 16(E) Discovery Motion for Confidential Legal Visitation and Return of Property Pursuant to Fed. R. Cr. P. 41(g)" (Doc. 147); and (3) a "Reply to

---

[1]     People in prison "who proceed pro se . . . are entitled to liberal construction of their filings[.]" *Toevs v. Reid*, 685 F.3d 903, 911 (10th Cir. 2012); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But, the court does "not act as [an] advocate" for pro se litigants.  *United States v. Griffith*, 928 F.3d 855, 864 n.1 (10th Cir. 2019).

Government's Response to Defendant's Motion to Reduce or Vacate Sentence Under 28 U.S.C. §2255 Request for Hearing/Discovery and Appointment of Counsel" (Doc. 158).

The court denies Mr. Williams's Motion for Transcripts (Doc. 140).  Then, the court addresses Mr. Williams's evidence supporting his § 2255 motion and, finding the evidence inadequate, orders Mr. Williams to show cause why the court shouldn't dismiss his § 2255 motion for inadequate factual support.  Last, the court denies Mr. Williams's Motion for Appointment of Counsel, but defers ruling on the two motions seeking an evidentiary hearing and discovery until Mr. Williams files his response to the Show Cause Order contained in this Order.  The court explains these rulings, below.

I.      **Factual Background**

A.      **The *Black* Investigation**

On April 12, 2016, the government, investigating drug trafficking at CCA, served a grand jury subpoena seeking "all video footage or still images currently retained by [CCA] depicting any internal or external surveillance video or still image taken between July 2014 and April 12, 2016 at the CCA facility in Leavenworth, Kansas."  *United States v. Carter*, 429 F. Supp. 3d 788, 834 (D. Kan. 2019) (brackets omitted).  In response, CCA provided six hard drives of surveillance video footage that included video of attorney-client meeting rooms.  *Id.*  At a discovery conference in a criminal case charging the case's defendants with conspiracy to distribute controlled substances inside CCA, defense counsel learned the government "possessed soundless video recordings of attorney visitation rooms at CCA, and possessed and distributed audio recordings of telephone calls between several detainees and their counsel."  *Id.* at 798.  Then Chief Judge Julie A. Robinson "immediately clawed back and impounded the recordings,

and conducted several emergency hearings[.]" *Id.* at 799. Later, Judge Robinson appointed a Special Master to review the recordings, then she conducted a full evidentiary hearing. *Id.*

Recognizing possible Sixth Amendment violations, Judge Robinson appointed our District's Federal Public Defender (FPD) to "represent any defendant from the District of Kansas who may have a post-conviction Sixth Amendment claim based on the recording of in-person attorney-client meetings or attorney-client phone calls[.]" D. Kan. S.O. 18-3. The FPD was "appointed to represent all litigants impacted by the Sixth Amendment inquiries in [the *Black*] case for purposes of 28 U.S.C. § 2255, even if the FPD did not represent those litigants in their underlying criminal cases." *Carter*, 429 F. Supp. 3d at 825 n.174. The FPD has filed more than 110 petitions "seeking relief based on the Sixth Amendment violations and prosecutorial misconduct discovered in the *Black* case." *Id.* at 901. The FPD has not filed a petition for Mr. Williams.

On August 13, 2019, Judge Robinson issued her Findings of Fact and Conclusions of Law in a 188-page ruling, in a case styled *United States v. Carter*. *See Carter*, 429 F. Supp. 3d 788. For continuity, this Order refers to that ruling as the "*Black* Order." Judge Robinson intended for the *Black* Order to serve as "a roadmap for future consideration of the many cases pending on these issues under § 2255." *Id.* at 800. Indeed, this Order uses the *Black* Order as such a roadmap.

**B.      Mr. Williams's Case**

Mr. Williams was detained at CCA, pretrial, from August 2014 through November 2015. Doc. 147-1 at 1 (Williams Aff. ¶ 4). In August 2015, Mr. Williams pleaded guilty to the charge in Count 1 of a Superseding Indictment—namely, Conspiracy to Possess with Intent to Distribute Approximately Six Kilograms of Cocaine, violating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and

846.  Doc. 107 at 1.  On November 2, 2015, the court sentenced Mr. Williams to 156 months in prison.  Doc. 123 at 2.

In December 2019, Mr. Williams filed the § 2255 petition (Doc. 147) at issue here.  He alleges that he suspected government foul play during his time at CCA.  Doc. 147-1 at 1 (Williams Aff. ¶ 4).  Specifically, Mr. Williams claims he told his attorney that the initial Indictment was legally insufficient, and he could appeal this alleged error.  *Id.*  After this conversation, the government filed a Superseding Indictment fixing the alleged error.  *Id.*  Mr. Williams says that he lost trust in his attorney following these developments because he believed his attorney had informed the government about the Indictment's error.  *Id.*  But, in the later light of developments discovered in the *Black* investigation, Mr. Williams now suspects the government procured and accessed his taped conversations with counsel, thus violating his Sixth Amendment rights.

## II.     Mr. Williams's Pending Motions

This Memorandum and Order addresses three filings.  First is Mr. Williams's Motion for an Order to Receive Transcripts as Evidence (Doc. 140).  Second is Mr. Williams's "Motion to Vacate and Discharge with Prejudice under 28 U.S.C. § 2255(f)(4); and Motion for Fed. R. Crim. P. 16(E) Discovery Motion for Confidential Legal Visitation and Return of Property Pursuant to Fed. R. Cr. P. 41(g)" (Doc. 147).  Last is Mr. Williams's "Reply to Government's Response to Defendant's Motion to Reduce or Vacate Sentence Under 28 U.S.C. §[ ]2255 Request for Hearing/Discovery and Appointment of Counsel" (Doc. 158).  The court construes the last of the three as a Motion for Hearing, Discovery, and Appointment of Counsel.  The court's analysis begins with the Motion for Transcripts (Doc. 140).

**A.** **Motion for an Order to Receive Transcripts as Evidence (Doc. 140)**

Mr. Williams asks the court for his phone transcripts from CCA to present as evidence in his § 2255 motion. Doc. 140. And, in his § 2255 motion, Mr. Williams requests an opportunity to inspect under Fed. R. Crim. P. 16(a)(1)(E)[2] and seeks return of property under Fed. R. Crim. P. 41(g). Doc. 147 at 1. The court construes these filings broadly to request any phone transcripts, recorded phone calls, or soundless videos of attorney-client meetings in the government's possession that involve Mr. Williams.

The government doesn't directly respond to Mr. Williams's request. Doc. 152 at 48–49. Instead, it "acknowledges that it obtained phone calls in connection with the *Black* case[.]" *Id.* at 8. And the government "advises that, to the best of its knowledge, it does not have any of these items in its possession." *Id.* at 48.

The government's representation comports with statements by the FPD. The FPD, appointed to represent detainees and inmates implicated by the *Black* investigation, exhaustively reviewed the audio and video recordings surrendered by the government. In a letter dated January 8, 2019, the FPD informed Mr. Williams that it had "reviewed the records in [his] case, including those from CCA and the phone service provider" and concluded there "is no viable claim that the government accessed any attorney-client communications in [his] case." Doc. 147-2 at 12 (Williams Aff. Ex. F). The FPD has not entered an appearance for Mr. Williams, nor has the FPD supplemented his pro se motion.

The government's representations also square with the record in the *Black* investigation. The government's status reports in *Black* provide a record of the audio calls the government has

---

[2]     The court construes Mr. Williams's reference to "Fed. R. Crim P. 16(E)" as a reference to Fed. R. Crim. P. 16(a)(1)(E), which requires the government to "permit the defendant to inspect and to copy or photograph . . . papers, documents, data, . . . or copies or portions of any of these items, if the item is within the government's possession, custody, or control[.]"

turned over to the FPD.[3]  The court has reviewed the status reports submitted by the government

and these status reports show the government possesses none of Mr. Williams's phone calls.[4]

        This much is certain.  Even "when a collateral attack on a final conviction rests on

constitutional grounds, the presumption of regularity that attaches to final judgments makes it

---

[3]        The court takes judicial notice of the docket and files in *United States v. Carter*.  Fed. R. Evid.
201(b); *see* Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding.");
*see also Hansen v. Harper Excavating Inc.*, 641 F.3d 1216, 1219 n.2 (10th Cir. 2011) (taking judicial
notice of documents from a district court's electronic database).  The court reviewed the following *Carter*
Status Reports and attaches them to this Order:  Status Report of Recorded Telephone Call Discovery,
*United States v. Carter*, No. 16-20032-02-JAR (D. Kan. Aug. 27, 2019), ECF No. 764; Supplemental
Status Report of Recorded Telephone Call Discovery, *United States v. Carter*, No. 16-20032-02-JAR (D.
Kan. Oct. 10, 2019), ECF No. 787; Supplemental Status Report of Recorded Telephone Call Discovery,
*United States v. Carter*, No. 16-20023-02-JAR (D. Kan. Nov. 14, 2019), ECF No. 799; Supplemental
Status Report of Recorded Telephone Call Discovery, *United States v. Carter*, No. 16-20032-02-JAR (D.
Kan. Feb. 14, 2020), ECF No. 806; Supplemental Status Report of Recorded Telephone Call Discovery,
*United States v. Carter*, No. 16-20032-02-JAR (D. Kan. Aug. 18, 2020), ECF No. 846; Supplemental
Status Report of Recorded Telephone Call Discovery, *United States v. Carter*, No. 16-20032-02-JAR (D.
Kan. Oct. 30, 2020), ECF No. 848; Supplemental Status Report of Recorded Telephone Call Discovery,
*United States v. Carter*, No. 16-20032-02-JAR (D. Kan. July 6, 2021), ECF No. 854; Supplemental Status
Report of Recorded Telephone Call Discovery, *United States v. Carter*, No. 16-20032-02-JAR (D. Kan.
July 22, 2021), ECF No. 855.

[4]        To effectuate its discovery motion in the *Black* case, the FPD provided the government with lists
of names of incarcerated people—including Mr. Williams—and the government reviewed its files to see
if it had phone call recordings or transcripts in its possession.  Status Report of Recorded Telephone Call
Discovery Attachment 2, *United States v. Carter*, No. 16-20032-02-JAR (D. Kan. Aug. 27, 2019), ECF
No. 764-2.  The government submitted a spreadsheet with information for each person in custody.  *See*
Status Report of Recorded Telephone Call Discovery Attachment 3, *United States v. Carter*, No. 16-
20032-02-JAR (D. Kan. August 27, 2019), ECF No. 764-3.  Mr. Williams is listed in this spreadsheet,
and the data shows that the government did not acquire Mr. Williams's phone calls in the CCA
investigation and did not acquire any phone calls in Mr. Williams's case.  *See id.* at 10.  The
government's conclusion has remained the same throughout the *Black* investigation.  *See id.* (providing
information as of November 12, 2018); Status Report of Recorded Telephone Call Discovery Attachment
4, *United States v. Carter*, No. 16-20032-02-JAR (D. Kan. Aug. 27, 2019), ECF No. 764-4 at 12
(providing information as of November 15, 2018); Status Report of Recorded Telephone Call Discovery
Attachment 5, *United States v. Carter*, No. 16-20032-02-JAR (D. Kan. Aug. 27, 2019), ECF No. 765-5 at
11 (providing information as of December 5, 2019); Status Report of Recorded Telephone Call Discovery
Attachment 13, *United States v. Carter*, No. 16-20032-02-JAR (D. Kan. Aug. 27, 2019), ECF No. 764-13
at 10 (providing information as of February 14, 2019); Status Report of Recorded Telephone Call
Discovery Attachment 16, *United States v. Carter*, No. 16-20032-02-JAR (D. Kan. Aug. 27, 2019), ECF
No. 764-16 at 12 (providing information as of March 1, 2019); Status Report of Recorded Telephone Call
Discovery Attachment 21, *United States v. Carter*, No. 16-20032-02-JAR (D. Kan. Aug. 27, 2019), ECF
No. 764-21 at 10 (providing information as of July 11, 2019); Supplemental Status Report of Telephone
Call Discovery Attachment 3, *United States v. Carter*, No. 16-20032-02-JAR (D. Kan. Feb. 14, 2020),
ECF No. 806-3 at 9 (providing information as of February 14, 2020).

appropriate to assign a proof burden to the defendant." *Parke v. Raley*, 506 U.S. 20, 31 (1992). And our Circuit has ruled that Mr. Williams cannot prove that the government procured his attorney-client communications with proof that the government procured someone else's attorney-client communications. *United States v. Harssfell*, 735 F. App'x 553, 554 (10th Cir. 2018) (concluding defendant who relied primarily on *Black* investigation findings failed "to make an adequate showing that *his* rights were violated").

At this stage, Mr. Williams has failed to make a viable showing that the government possesses any recordings or transcripts of his attorney-client communications. For now, the court denies his request "for an order to receive transcripts" in Doc. 140 as well as the portion of his § 2255 motion (Doc. 147) that moves under Fed. R. Crim. P. 16(a)(1)(E) to inspect documents and objects in the government's possession. The court also denies his request under Fed. R. Crim. P. 41(g) for a return of property.

### B.      § 2255 Motion

The court now turns to the second motion pending before the court: Mr. Williams's Motion to Vacate and Discharge with Prejudice under 28 U.S.C. § 2255(f)(4) (Doc. 147). First, the court addresses the government's argument that the motion is untimely. Finding the motion timely, the court then addresses the motion's merits.

### 1.      Timeliness of § 2255 Motion

Mr. Williams's § 2255 petition is subject to the one-year limitation period established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The one-year "limitations period commences on the latest of four dates." *United States v. Denny*, 694 F.3d 1185, 1188 (10th Cir. 2012). Mr. Williams invokes one of the four: § 2255(f)(4). Section 2255(f)(4) provides for a one-year limitations period running from "the date on which the facts

supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). "A petition's untimeliness must either be pled by the government as an affirmative defense, or be clear from the face of the petition itself." *Kilgore v. Att'y Gen. of Colo.*, 519 F.3d 1084, 1089 (10th Cir. 2008) (citations omitted).

To invoke this limitation successfully, Mr. Williams must identify "the factual matter supporting his § 2255 claim, discovery of which triggers the refreshed 1-year period." *Johnson v. United States*, 544 U.S. 295, 304 (2005). In *Johnson*, the "factual matter" supporting petitioner's § 2255 claim was a state court order vacating his earlier state court conviction. *Id.* In *Denny*, the "factual matter" triggering a refreshed one-year period was defense counsel's failure to file a notice of appeal—this was the "critical fact supporting his claim of ineffective assistance of counsel." 694 F.3d at 1189.

Thus, the court must identify the "factual matter" supporting Mr. Williams's Sixth Amendment claim, based on the *Black* investigation. In a *Black*-related case, Judge Robinson held that, even if a petitioner "had some reason to suspect the government had not only possessed the recording of his attorney-client call but also became privy to it, this suspicion would have been insufficient to trigger any obligation to assert a Sixth Amendment claim." *CCA Recordings 2255 Litig. v. United States*, No. 19-cv-2491-JAR-JPO, 2021 WL 425809, at *9 (D. Kan. Feb. 8, 2021) (considering whether a petitioner's § 2255 motion was timely under § 2255(f)(4)). The court agrees with this conclusion. So, mere suspicions based on the *Black* investigation are not enough.

Suspicions are insufficient because of our Circuit's *Shillinger* standard, which governs Sixth Amendment claims. Under *Shillinger*, to prove a per se Sixth Amendment violation requires a "privy-to element"—that is, the petitioner must "demonstrate that the government

intentionally became privy to his protected communications." *Id.* at *7 (citing *Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995)).  Judge Robinson held that, under § 2255(f)(4), "it was not until at least the October 2018 evidentiary hearing [in the *Black* case] that evidence supporting the privy-to element . . . came to light." *Id.* at *9.

In *Black* related cases, our court has used this October 2018 date as the presumed earliest date when the refreshed § 2255(f)(4) limitations period begins to run.  *See id.*; *see also United States v. Sloan*, No. 13-40025-JAR-3, 2021 WL 3617312, at *3–4 (D. Kan. Aug. 16, 2021) (finding a § 2255 petitioner's January 2020 motion not timely under § 2255(f)(4) based on an October 2018 start date).  In *Sloan*, the court held that "it was not until at least the October 2018 evidentiary hearing in [the *Black*] case that evidence supporting" a Sixth Amendment claim came to light.  *Sloan*, 2021 WL 3617312, at *3.  But still, a § 2255 claimant relying on subsection (f)(4) may overcome this presumed October 2018 start date if the record suggests a reason for a later start date.  *Id.* at *3 n.47 (citing *United States v. Phommaseng*, No. 15-20020-JAR, 2019 WL 3801720, at *8 (D. Kan. Aug. 13, 2019) (ruling that the "existence and scope of potential Sixth Amendment claims was not certain until January 2019" for petitioner's audio recordings claim because that was when the government admitted to acquiring his recorded attorney-client calls)).

Here, Mr. Williams filed his § 2255 petition on December 30, 2019.  Doc. 147.  Mr. Williams's motion is timely under § 2255(f)(4) unless the "facts supporting" his claim "could have been discovered through the exercise of due diligence" on or before December 30, 2018.  The government argues, as an affirmative defense, that Mr. Williams's petition is untimely.  Doc. 164 at 6–9.  Specifically, it claims Mr. Williams "was aware that he had a potential claim on or about September 8, 2016, when he attempted to obtain his phone records from CCA[.]" *Id.*

at 8.  And as the government points out, Mr. Williams's affidavit admits that he intentionally refrained from filing his § 2255 motion even after he received the FPD's letter notifying him of a potential Sixth Amendment claim on December 23, 2018.  *Id.*  Thus, the government contends, Mr. Williams "could have discovered the facts supporting his claim through the exercise of due diligence on or before December 29, 2018."  *Id.* at 8–9.

But Mr. Williams could not have known he had a potential claim when he tried to procure his phone records in September 2016.  All he had in September 2016 were suspicions, and suspicions are insufficient.  *CCA Recordings 2255 Litig.*, 2021 WL 425809, at *9.  To trigger a fresh § 2255(f)(4) clock, Mr. Williams needed "facts supporting the claim[.]"  28 U.S.C. § 2255(f)(4).  His claim, a per se Sixth Amendment violation, has a privy-to element— that is, "that the government intentionally became privy to his protected communications."  *CCA Recordings 2255 Litig.*, 2021 WL 425809, at *7 (citing *Shillinger*, 70 F.3d at 1142).  So, the relevant inquiry asks:  when did Mr. Williams have evidence supporting the privy-to element of his claim?

Judge Robinson has used October 2018 as the default start date for the § 2255(f)(4) clock because that is the earliest when evidence supporting the privy-to element came to light.  *Sloan*, 2021 WL 3617312, at *3–4.  But Mr. Williams may overcome this October 2018 start date. Here, the record shows that Mr. Williams didn't have evidence supporting the privy-to element of his claim until January 2019.

On December 23, 2018, Mr. Williams received a letter from the FPD dated December 20, 2018.  Doc. 147-1 at 2 (Williams Aff. ¶ 8); Doc. 147-2 at 10 (Williams Aff. Ex. E).  This letter informed Mr. Williams that Judge Robinson had appointed the FPD to represent defendants affected by the *Black* investigation.  Doc. 147-2 at 10 (Williams Aff. Ex. E).  The letter

explained that the investigation was ongoing but—critically—also explained that the FPD could not determine whether Mr. Williams was entitled to relief. *Id.* The letter invited Mr. Williams to discuss his case with the FPD. *Id.*

Mr. Williams called the FPD on January 9, 2019. Doc. 147-1 at 2–3 (Williams Aff. ¶ 9). He spoke to an attorney in the FPD office, and the attorney told Mr. Williams that his attorney-client phone calls were recorded and accessed. *Id.* The court finds, based on the current record, that January 9, 2019 was the first date that Mr. Williams possessed evidence supporting the privy-to element of his claim. Thus, the court concludes that Mr. Williams's one-year limitations period under § 2255(f)(4) began to run on January 9, 2019. This conclusion makes his December 30, 2019 motion (Doc. 147) timely. And in the next section, the court turns to the merits of that motion.

### 2.    Merits of Sixth Amendment Claim

#### a)    *Legal Standard*

Mr. Williams's motion relies on 28 U.S.C. § 2255. This provision provides that a petitioner "in custody under sentence of a court established by Act of Congress . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A petitioner may attack a sentence on the ground that the sentence was "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" *Id.*

Mr. Williams pursues the "violation of the Constitution" route—he suspects, based on the *Black* investigation, that the government violated his Sixth Amendment rights by accessing his attorney-client phone calls. "The Sixth Amendment right to effective assistance of counsel

includes the ability to speak candidly and confidentially with counsel free from unreasonable government interference." *Carter*, 429 F. Supp. 3d at 881 (citing *Weatherford v. Bursey*, 429 U.S. 545, 554 n.4 (1977) ("One threat to the effective assistance of counsel posed by government interception of attorney-client communications lies in the inhibition of free exchanges between defendant and counsel because of the fear of being overheard.")). The *Black* investigation implicates Sixth Amendment concerns—our Circuit has held "that a prosecutor's intentional intrusion into the attorney-client relationship constitutes a direct interference with the Sixth Amendment rights of a defendant[.]" *Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995). Such an intrusion by the prosecution, "absent a countervailing state interest . . . constitute[s] a *per se* violation of the Sixth Amendment." *Id.*

The court must hold an evidentiary hearing on a § 2255 motion unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). The burden is on the petitioner to establish his right to § 2255 relief. *United States v. Washington*, 890 F.3d 891, 895 (10th Cir. 2018) (citations omitted). A § 2255 petitioner cannot rely on unsupported, conclusory allegations to meet this burden. *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (affirming district court's denial of § 2255 motion as meritless because pro se petitioner's "allegations [were] merely conclusory in nature and without supporting factual averments").

Judge Robinson anticipated that the *Black* investigation would spur § 2255 motions.  In the *Black* Order, Judge Robinson determined that § 2255 petitioners raising *Black*-related claims must make the following threshold showings.  *See Carter*, 429 F. Supp. 3d at 892–93.

If the claim is based on soundless video recordings, the petitioner initially must show: "(1) that the video of the attorney-client meeting exists, and (2) that the quality of the non-verbal communication is sufficient to confirm communication between the detainee and counsel." *Carter*, 429 F. Supp. 3d at 892.  Also, the petitioner must provide an affidavit from defense counsel that confirms the nature and purpose of the recorded "meeting(s) were within the ambit of protected communication[.]"  *Id.* at 892.  If the claim is based on audio recordings, the petitioner initially must show:  "(1) telephone recordings exist, and (2) a given call contains protected attorney-client communication[.]"  *Id.*  And, petitioner must provide an affidavit from defense counsel that confirms the calls were protected communication.  *Id.*  If a petitioner fails to make these showings, the § 2255 motion is dismissed without an evidentiary hearing.  *United States v. Ramsey*, No. 09-20046-09, 2021 WL 1123640, at *2 (D. Kan. Mar. 24, 2021) (dismissing, without an evidentiary hearing, § 2255 petition for a lack of factual basis where petitioner relied primarily on the *Black* investigation but wasn't listed as a detainee with any recorded phone calls from CCA).  It was Judge Robinson's "intent that this threshold showing would assist in eliminating claims where it was clear that no protected communication existed, for example, where there was no recording at all, the recording was not audible or visible, or the purpose of the conversation was not to seek legal advice or strategy."  *United States v. Avalos*, No. 13-20026-JAR-01, 2021 WL 1426771, at *2 (D. Kan. Apr. 15, 2021).

*b)*      *Analysis*

One thing is clear:  Mr. Williams presents no video or telephone recordings.  The FPD investigated the government's video and audio recordings, and Judge Robinson appointed the FPD to represent defendants who may have a § 2255 claim based on the *Black* investigation.  D. Kan. S.O. 18-3.  The government surrendered CCA recordings and derivative evidence of audio calls to the FPD.  *See* Status Report of Recorded Telephone Call Discovery, *United States v. Carter*, No. 16-20032-02-JAR (D. Kan. Aug. 27, 2019), ECF No. 764.  "The FPD, along with defense counsel, proceeded to exhaustively review hundreds of hours of audio and video recordings, ultimately filing over 100 habeas motions alleging Sixth Amendment violations with respect to the government's alleged intentional-intrusion into these detainees' attorney-client conversations and meetings."  *United States v. Perez-Madrigal*, No. 16-20044-JAR-1, 2021 WL 1166108, at *2 (D. Kan. Mar. 26, 2021).  The FPD, having reviewed the audio and video evidence, has not entered an appearance for Mr. Williams, nor has it supplemented his pro se motion.  In sum, Mr. Williams fails to make the threshold showing for § 2255 petitioners raising *Black*-related claims because he hasn't shown that a video recording or an audio recording of his attorney-client communications exists.  *See Carter*, 429 F. Supp. 3d at 892–93.

Instead of presenting evidence of a video or audio recording, Mr. Williams relies on four things:  (1) the "spontaneous" filing of his Superseding Indictment; (2) phone calls with the FPD; (3) the related civil class action lawsuit; and (4) the *Black* investigation itself.  The court now evaluates each piece of evidence and decides whether it supports Mr. Williams's allegations of government intrusion.

*(1)     Superseding Indictment*

Mr. Williams believes that the filing of the Superseding Indictment, together with the *Black* investigation, shows that the government accessed his attorney-client meetings.[5]  Mr. Williams told his attorney that the Indictment contained an appealable error.  Mr. Williams explained to his attorney "that under *Apprendi v. New Jersey*, *Blakely v. Washington*, and *United States v. Booker* under a mandatory minimum sentence and statute, the drug amount has to [be] specified in the indictment and submitted to a jury."  Doc. 147-1 at 3 (Williams Aff. ¶ 12) (quotation cleaned up).  He told his attorney that the drug amount with which he was charged was not specified in his Indictment and the Indictment used the term "or more"—not a specific amount.  *Id.*  After he explained this to his attorney, Mr. Williams claims the government filed a Superseding Indictment that eliminated this purported "ground for an appeal by specifying the approximate amount of drugs" in Count One.  *Id.* at 3–4 (Williams Aff. ¶ 12).  Mr. Williams claims this "spontaneous" filing of the Superseding Indictment (Doc. 56) is evidence that the government accessed his calls.  Doc. 147-1 at 3 (Williams Aff. ¶ 9) ("I told Mr. Redmond that I was in fact being spied on and eavesdropped on by the U.S. Attorney[']s office due [to] a spontaneous filing of a superseding indictment[.]").

This is not sufficient evidence that the government accessed Mr. Williams's protected attorney-client communications for several reasons.  *First*, Mr. Williams is speculating.  The "presumption of regularity that attaches to final judgments" places the burden of proof squarely on Mr. Williams.  *Parke*, 506 U.S. at 31.  His speculation does not overcome this presumption

---

[5]     Mr. Williams testified he discussed the Indictment's "defect" during an attorney-client visit (suggesting a video recordings claim) and on a phone call (suggesting an audio recordings claim).  Doc. 147-1 at 3 (Williams Aff. ¶ 9) ("No later than me talking to my Attorney on the visit and on the securus pay telephone about a defect in my indictment . . . .").  As explained below, the filing of a Superseding Indictment doesn't show that the government accessed video or audio recordings of him and his counsel. So, the court need not distinguish between the audio recordings and video recordings.

and merely showing that the government accessed attorney-client conversations of others isn't proof that Mr. Williams's attorney-client conversations were accessed. *Harssfell*, 735 F. App'x at 554.

*Second*, Mr. Williams "fails to state how he could have personal knowledge of such recordings." *Id.* (citing Fed. R. Evid. 602). The Federal Rules of Evidence provide that witnesses "may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602; *see also United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1132 (10th Cir. 2014) (explaining that a witness does not have actual knowledge if "the witness could not have actually perceived or observed that which he testifies to" (citation and internal quotation marks omitted)). Mr. Williams hasn't demonstrated he has personal knowledge about a recording.

*Third*, Mr. Williams hypothesizes based on faulty facts and erroneous assumptions of law. He asserts he told his attorney that "the initial indictment did not specify the amount of drugs attributable to" him. Doc. 147-1 at 3 (Williams Aff. ¶ 12). But Count 1 of the initial Indictment charged Mr. Williams with conspiring to possess with intent to distribute "approximately 6 kilograms of" cocaine. Doc. 1 at 1–2. The Superseding Indictment did not change the drug quantity. It too charged Mr. Williams with conspiring with intent to distribute "approximately 6 kilograms" of cocaine. Doc. 56 at 1–2. Mr. Williams also claims he informed his attorney that the Indictment improperly included the phrase "or more[.]" Doc. 147-1 at 3 (Williams Aff. ¶ 12). But the phrase "or more" never appears in his Indictment. *See* Doc. 1.

The only difference between the Indictment and the Superseding Indictment is a new paragraph added to Count 1. This new paragraph asserted:

> With respect to each of these defendants, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other

> conspirators reasonably foreseeable to him, is approximately 6 kilograms of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(A).

Doc. 56 at 2. Mr. Williams believes the government spontaneously added this language to thwart his appeal. Trying to explain his argument based on this added language, Mr. Williams invokes *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005). Doc. 147-1 at 3 (Williams Aff. ¶ 12). These three cases establish that a jury must decide any fact necessary to support an above-guidelines sentence. *Apprendi*, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *Blakely*, 542 U.S. at 303–05 (reversing, based on *Apprendi*, an above-guidelines sentence enhanced by judicial finding of "deliberate cruelty" because jury had not found "deliberate cruelty"); *Booker*, 543 U.S. at 244 ("[W]e reaffirm our holding in *Apprendi*: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.").

Mr. Williams misunderstands *Apprendi*, *Blakely*, and *Booker*. Those cases deal with sentencing—not charging. The drug quantity charged—six kilograms—exposed Mr. Williams to a mandatory minimum sentence on Count 1. 21 U.S.C. § 841(b)(1)(A)(ii)(II). Even if the government never secured the Superseding Indictment, the government still could have convicted Mr. Williams based on the words in the original Indictment. And the language of the Indictment wouldn't have affected that conviction because the drug quantity affected his

sentence, not his conviction.  *See United States v. Ellis*, 868 F.3d 1155, 1167–68 (10th Cir. 2017).

Mr. Williams claims he told his attorney about an error in the Indictment language but there isn't an error—both forms of the Indictment specified the drug quantity.  And the government didn't need to prove the drug quantity because it's not an element of drug conspiracy.

Ultimately, Mr. Williams alleges that the filing of the Superseding Indictment caused him to lose faith in his counsel.  He thought his attorney had informed the government about his defense strategy but, in light of the *Black* investigation, he now believes that the government overheard him refer to defense strategy.  Doc. 147-1 at 2–3 (Williams Aff. ¶ 9).  Mr. Williams may have lost faith in his counsel, but there is nothing in the record that suggests that the government engaged in a Sixth Amendment violation that caused Mr. Williams to lose faith in his counsel.  The record lacks evidence that the government overheard Mr. Williams talk about the Indictment error because no such error ever existed—the government didn't need to file the Superseding Indictment to convict Mr. Williams.  Thus, the filing of a Superseding Indictment doesn't furnish evidence of a "violation of the Constitution or laws of the United States[.]"  28 U.S.C. § 2255(a).

### (2)     *Phone Calls with FPD*

As detailed above, Judge Robinson tasked the FPD with investigating the government's audio and video recordings, and she appointed the FPD to represent affected defendants with their post-conviction claims.  But the FPD hasn't sought any relief for Mr. Williams.  Though the FPD doesn't represent him and the FPD hasn't found any of his video or audio recordings, Mr. Williams alleges that the FPD told him—twice—that audio recordings and video recordings

exist, and his calls were accessed.  Doc. 147-1 at 2–4 (Williams Aff. ¶¶ 9, 14).  And he also claims that the FPD, despite this government intrusion, refuses to file a claim on his behalf.  Doc. 147-2 at 12 (Williams Aff. Ex. F); Doc. 147-1 at 3, 4 (Williams Aff. ¶¶ 11, 14).  Mr. Williams claims that the FPD is withholding information from him.  *Id.* at 4 (Williams Aff. ¶ 14).  In his Affidavit, Mr. Williams outlines his attempts to contact the FPD to resolve the confusion.  *Id.* at 3–5 (Williams Aff. ¶¶ 11, 13, 14, 16).

Mr. Williams's allegations lack "supporting factual averments."  *Fisher*, 38 F.3d at 1147. The record demonstrates that the FPD's investigation didn't uncover any of Mr. Williams's audio recordings[6] in the government's possession.  On December 20, 2018, the FPD informed Mr. Williams that the FPD was investigating his case but, because the investigation was ongoing, the FPD could not assure him that he had a claim.  Doc. 147-2 at 10 (Williams Aff. Ex. E).  On January 8, 2019, the FPD sent Mr. Williams a letter asserting that it had reviewed the records in Mr. Williams's case and found "no viable claim that the government accessed any attorney-client communication[.]"  Doc. 147-2 at 12 (Williams Aff. Ex. F).

Despite these letters concluding that Mr. Williams doesn't have a claim that the government violated his Sixth Amendment rights, Mr. Williams alleges that the FPD told him things to the contrary.  Mr. Williams alleges that the FPD told him on January 9, 2019 and May 22, 2019 that the government had accessed his calls.  Doc. 147-1 at 2–4 (Williams Aff. ¶¶ 9, 14). The status reports from the *Black* record offer clarity.

---

[6]     Mr. Williams bases this portion of his claim on audio recordings, not video recordings.  He alleges that the government accessed recordings of his attorney phone calls.  Doc. 147-1 at 2–3 (Williams Aff. ¶ 9) ("He said that my *calls* were accessed . . . .") (emphasis added); Doc. 147-1 at 4 (Williams Aff. ¶ 14) ("I called the [FPD] office and spoke to Katie Stevenson, [and] she told me that my *calls* have been accessed . . . .") (emphasis added).

The status reports provide a detailed account of all audio recordings the government turned over to the FPD.[7]  Indeed, those reports reference Mr. Williams.  The government's status reports from the *Black* investigation from November 12, 2018 through February 14, 2020 show that the government did not acquire Mr. Williams's calls in its CCA investigation, nor did the government acquire Mr. Williams's calls in his case.  *See supra* n.4 (listing *Black* status reports that cover government's disclosures from November 12, 2018 through February 14, 2020).

In sum, the record shows that the government doesn't possess any of Mr. Williams's calls.  Where Mr. Williams claims the FPD told him otherwise, that statement is not supported— indeed, it is contradicted—by the record.  It is a "contention[] that in the face of the record [is] wholly incredible." *Blackledge*, 431 U.S. at 73–74.  Thus, it cannot support Mr. Williams's claim of a constitutional violation.

### (3)   *CCA Civil Class Action Notice*

The court now turns to Mr. Williams's third piece of evidence.  Instead of audio recording or video recording evidence, Mr. Williams cites a settlement notice a class action case brought on behalf of individuals detained at CCA from June 2014 through June 2017.  Doc. 147- 1 at 5 (Williams Aff. ¶ 17) (citing Doc. 147-2 at 13–14 (Williams Aff. Ex. G)).  Mr. Williams cites this notice as evidence that he was "one of the many defendants listed as having their calls with counsel illegally recorded." *Id.*  But that's not what the notice says at all.

The notice reports that the civil "case was brought on behalf of certain individuals detained at CoreCivic's correctional facility[.]"  Doc. 147-2 at 14 (Williams Aff. Ex. G). Specifically, the settlement class includes individuals "detained at CoreCivic correctional facility

---

[7]      Mr. Williams alleges that the government destroyed documents and argues this explains why no one knows who—if anyone—accessed his calls.  But these are "conclusory allegations unsupported by specifics . . . subject to summary dismissal[.]" *Blackledge*, 431 U.S. at 73–74.

in Leavenworth, KS between June 1, 2014 and June 19, 2017." *Id.* (capitalization omitted). The notice explains the lawsuit alleged that defendants "illegally recorded communications between detainees and their attorneys without consent." *Id.* And, most importantly, the notice says Mr. Williams "*may* have a claim under the settlement[.]" *Id.* (emphasis added) (capitalization omitted). But the settlement notice doesn't provide any evidence of audio recordings or video recordings involving Mr. Williams.

*First*, the settlement notice is just that—a notice. It notifies Mr. Williams that he *may* have a claim. It does not provide (or even purport to provide) that Mr. Williams *does* have a claim. *Second*, the settlement is just that—a settlement. The parties reached their settlement before Judge Robinson made any findings on the merits of the case. Order Granting Final Approval of Class Action Settlement, Granting Motion for Attorney Fees, and Overruling Objections, *Huff v. CoreCivic, Inc.*, No. 17-2320-JAR-JPO (D. Kan. Jan. 28, 2020), ECF No. 177 at 6. And Judge Robinson, in approving the settlement, noted that the settlement averted "serious questions of law and fact[.]" *Id.* at 12. The notice itself says the class action defendants "deny the allegations and any liability." Doc. 147-2 at 14 (William Aff. Ex. G). The court finds nothing in the notice to support Mr. Williams's claims of intrusion. *Third*, the notice specifically involves all people detained at CCA during a specific time window—a criterion too vague to provide the required threshold finding. The court can't discern from the notice where, if anywhere, Mr. Williams fits into the settlement. And the court certainly can't discern evidence of recorded attorney-client conversations from this notice. *Last*, the settlement doesn't even apply to Mr. Williams. The court has examined the docket in the case, *Huff v. CoreCivic, Inc.*, and it shows that Mr. Williams opted out of the settlement.[8] Plaintiffs' Motion for Order

---

[8]      The court takes judicial notice of the docket and files in *Huff v. CoreCivic, Inc.*, No. 17-2320-JAR-JPO. Fed. R. Evid. 201(b); *see* Fed. R. Evid. 201(d) ("The court may take judicial notice at any

Granting Final Approval to Class Settlement Exhibit C, *Huff v. CoreCivic, Inc.*, No. 17-2320-JAR-JPO (D. Kan. Jan. 17, 2020), ECF No. 171-6 at 4.  Mr. Williams excluded himself from this settlement class, so the settlement can't provide any evidence to support his claims.

In sum, neither the notice, nor the settlement itself, help Mr. Williams make the required threshold showing because neither provides evidence that the government violated Mr. Williams's constitutional rights.

### (4)     *Black Investigation*

Mr. Williams asks the court to skip straight from the *Black* investigation to an evidentiary hearing.  *See* Doc. 147 at 6 ("Facts derived from the investigations in *Black*, . . . in addition to facts that will be further developed at an evidentiary hearing . . . will demonstrate that the government intentionally obtained the video recordings—and possibly telephone calls—[]of privileged attorney-client communications during the prosecution of Petitioner's case.").[9]  But he can't do that.  *Harssfell*, 735 F. App'x at 554.  Before a § 2255 petitioner with a *Black*-related claim is entitled to an evidentiary hearing, he must make a threshold showing.  *See Ramsey*, 2021 WL 1123640 (dismissing § 2255 petition that relied solely on petitioner's speculation surrounding the *Black* investigation).  Mr. Williams must show that *his* rights were violated—

---

stage of the proceeding."); *see also Hansen*, 641 F.3d at 1219 n.2 (taking judicial notice of documents from a district court's electronic database).

[9]      Mr. Williams focuses on the actions of several prosecutors mentioned in the *Black* Order.  The *Black* Order mentions the government's "syste[mic] practice of purposeful collection, retention, and exploitation of calls from CCA detainees to their attorneys."  *Carter*, 429 F. Supp. 3d at 900.  But the Assistant United States Attorney who prosecuted the case against Mr. Williams, Gregory G. Hough, is not mentioned in the *Black* Order.  *See generally id.*  Indeed, the *Black* Order indicates that the problems that came to light in the *Black* investigation "resided in the Kansas City office[.]"  *Id.* at 863 n.438.  Mr. Hough is an Assistant United States attorney working in the Topeka office.  Doc. 56 at 3.  The prosecution practices of the Kansas City office and the other offices "were markedly different."  *Id.*  Mr. Williams cannot rely primarily on the *Black* case to prove that the government violated his rights.

that *his* "sentence was imposed in violation of the Constitution[.]"  28 U.S.C. § 2255(a).  The

*Black* Order explains how Mr. Williams can make this showing.

c)        *Order to Show Cause on § 2255 Motion*

In the *Black* Order, Judge Robinson held that § 2255 petitioners must make the following

threshold showings for a claim based on audio recordings:  (1) show a telephone recording

exists; (2) show a "given call contains protected attorney-client communication, *i.e.*,

communication that relates to legal advice or strategy sought" by the client; and (3) provide an

affidavit from defense counsel confirming that the nature and purpose of the intercepted and

accessed call was within the ambit of protected communication.  *Carter*, 429 F. Supp. 3d at 892.

For a claim based on video recordings, Mr. Williams's threshold showing requires him to (1)

show that a video of an attorney-client meeting exists; (2) show "that the quality of the non-

verbal communication in the video is sufficient to confirm communication between" the detainee

and counsel; and (3) provide an affidavit from defense counsel confirming that the content of the

meeting related to legal advice or strategy.  *Id.* at 890–92.

A court must grant an evidentiary hearing unless "the motion and the files and records of

the case conclusively show that the prisoner is entitled to no relief[.]"  28 U.S.C. § 2255(b).  Mr.

Williams must meet the *Black* threshold showing before he deserves an evidentiary hearing.

*Ramsey*, 2021 WL 1123640, at *1.  As explained above, the motions, files, and records

referenced here—at this stage—do not satisfy the threshold requirement that protected

communications exist.  *See Avalos*, 2021 WL 1426771, at *2 (explaining Judge Robinson's

intent for the threshold showing to "assist in eliminating claims where it [is] clear that no

protected communication exist[s]").

Specifically, he must identify how he has shown that recordings of his conversations with counsel exist.

Consequently, the court orders Mr. Williams to show cause in writing why the court should not dismiss his § 2255 petition for a lack of sufficient factual basis or evidence on which to proceed.

**Mr. Williams must file this response on or before February 4, 2022.**  If no response is filed, the court will dismiss his petition.

### C.      Motion for Hearing, Discovery, and Appointment of Counsel (Doc. 158)

Trying to effectuate his request under § 2255, Mr. Williams asks the court to conduct an evidentiary hearing, allow discovery, and appoint counsel.  Doc. 158 at 39.  The court denies the motion in part—denying his Motion to Appoint Counsel—and will decide the rest after Mr. Williams responds to the Show Cause Order.  All three requests derive from Mr. Williams's § 2255 petition.

First, as mentioned many times already, § 2255(b) requires an evidentiary hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]"  28 U.S.C. § 2255(b).  Whether Mr. Williams is entitled to relief depends upon his response to the above Show Cause Order.  So, the court will decide whether to grant Mr. Williams's Motion for Hearing (Doc. 158) after he files his response to the Show Cause Order.

Second, Rule 6(a) of the Rules Governing Section 2255 Proceedings grants courts discretion, for good cause, to "authorize a party to conduct discovery[.]"  Whether Mr. Williams is entitled to conduct discovery depends upon the content of his response to this Order.  The court will decide whether to grant Mr. William's Motion for Discovery (Doc. 158) once he files his response.

Last, Mr. Williams asks the court to appoint counsel. Whether to appoint counsel is up to the court's discretion. *See* 28 U.S.C. § 2255(g) (referring to 18 U.S.C. § 3006A); *see also* 18 U.S.C. § 3006A(a)(2)(B) (providing that the court may appoint counsel for a petitioner seeking relief under § 2255 if "the court determines that the interests of justice so require"). There "is no constitutional right to counsel beyond the direct appeal of a criminal conviction[.]" *Coronado v. Ward*, 517 F.3d 1212, 1218 (10th Cir. 2008) (citation omitted). Appointment of counsel is mandatory if an evidentiary hearing is warranted. *See* Rule 8(c) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

The court concludes that the interests of justice—at least at this stage—do not favor appointment of counsel. Our District appointed the FPD to represent those whose rights were affected by the *Black* investigation, but the FPD declined to enter an appearance for Mr. Williams. Also, Mr. Williams has demonstrated that he can argue his case capably. The court thus denies the portion of Doc. 158 that requests appointment of counsel.

## III.    Conclusion

Judge Robinson—who first learned of potential government intrusion—presided over the case and investigation, heard all evidence, and issued the 188-page findings of fact and conclusions of law on which Mr. Williams predominantly relies. Judge Robinson provided courts with a roadmap for navigating § 2255 motions exactly like this one. This roadmap established a threshold showing. Mr. Williams has not met this threshold because he has failed to make a viable showing, at this stage, that protected communications exist.

For the reasons given above, the court denies his request for his CCA phone records (Doc. 140) and denies the part of his § 2255 motion (Doc. 147) that seeks to inspect and requests a return of property. The court finds Mr. Williams's Motion to Vacate under § 2255 timely but

concludes that the motion currently lacks a sufficient factual basis to proceed for him.  So, the court orders Mr. Williams to show cause why the court should not dismiss the rest of his Motion to Vacate under § 2255.  Last, the court denies Mr. Williams's Motion for a Hearing, Discovery, and Appointment of Counsel (Doc. 158) in part; the request to appoint counsel is denied, but the court defers the requests for an evidentiary hearing and discovery until Mr. Williams responds to the Show Cause Order.

**Mr. Williams must file the response described in this Order on or before February 4, 2022.**  If no response is filed, the court will dismiss the petition.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Williams's Motion for Order for Phone Transcripts (Doc. 140) is denied.

**AND, IT IS FURTHER ORDERED THAT** Mr. Williams's "Motion to Vacate and Discharge with Prejudice under 28 U.S.C. § 2255(f)(4); and Motion for Fed. R. Crim P. 16(E) Discovery Motion for Confidential Legal Visitation and Return of Property Pursuant Fed. R. Cr. P. 41(g)" (Doc. 147) is denied in part.  The relief requested under Fed. R. Crim. P. 16(a)(1)(E) and 41(g) is denied.

**AND, IT IS FURTHER ORDERED THAT** Mr. Williams must show cause by **February 4, 2022** why the court should not dismiss his "Motion to Vacate and Discharge With Prejudice Under 28 U.S.C. § 2255[]" (Doc. 147).

**AND, IT IS FURTHER ORDERED THAT** Mr. Williams's Motion for Hearing, Discovery, and Appointment of Counsel (Doc. 158) is denied in part.  His requests for a hearing and discovery remain pending.

**IT IS SO ORDERED.**

Dated this 21st day of December, 2021, at Kansas City, Kansas.

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**